IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON TIPTON, | ) | |
| | ) | Civil Action No. 2:24-cv-156 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLEGHENY COUNTY, | ) | |
| LORI SCHULTZ, ESTHER STANTON, | ) | |
| SANDRA SIMMS, JOHN/JANE | ) | |
| DOE(S) 1, ASHLEY BRINKMAN, | ) | |
| RENEE MADDEN, ORLANDO | ) | |
| HARPER, FNU D'ANGELO, | ) | |
| FNU TURNER, JOHN/JANE | ) | |
| DOE(S) 2, and HUNTER SARVER, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | Electronically Filed. |

COMPLAINT IN A CIVIL ACTION

COMES NOW, the Plaintiff, AARON TIPTON, by and through his attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, MASSIMO A. TERZIGNI, ESQUIRE, and ELIZABETH A. TUTTLE, ESQUIRE, and hereby files this Complaint in a Civil Action as follows:

JURISDICTION AND VENUE

1. This is an action for the redress of grievances and in vindication of civil rights guaranteed to the Plaintiff under the Constitution of the United States and the laws enacted in furtherance thereof, including 42 U.S.C. § 1983.

2. This action is brought against the Defendants for violating Plaintiff's rights under the Eighth Amendment of the United States Constitution and 42 U.S.C. § 1983.

3. Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3). Supplemental jurisdiction over Plaintiff's state law claim is also proper pursuant to 28 U.S.C.A. § 1367.

4.  Venue is proper under 28 U.S.C.A. § 1391(b). All claims set forth herein arose in the Western District of Pennsylvania.

## PARTIES

5.  Plaintiff, Aaron Tipton, is an adult individual and resident of Allegheny County, Pennsylvania.

6.  Defendant, Allegheny County ("County"), is now and was, at all times relevant to the Plaintiff's claims, a government entity with administrative offices located at 445 Fort Pitt Boulevard, Suite 300, Pittsburgh, Pennsylvania 15219. Defendant County controls and maintains the Allegheny County Jail ("ACJ"), a county corrections facility located at 950 Second Avenue, Pittsburgh, Pennsylvania 15219. At all times relevant hereto, Defendant County was acting through its agents, subsidiaries, officers, employees and assigns purporting to act within the full scope of their agency, office, employment or assignment.

7.  Defendant, Lori Schultz ("Schultz"), is an adult female individual. Plaintiff believes, and therefore avers, that Defendant Schultz is a resident of Allegheny County, Pennsylvania. At all times relevant to this Complaint, Defendant Schultz was employed by Defendant County at ACJ as a nurse practitioner.

8.  Defendant, Esther Stanton ("Stanton"), is an adult female individual. Plaintiff believes, and therefore avers, that Defendant Stanton is a resident of Allegheny County, Pennsylvania. At all times relevant to this Complaint, Defendant Stanton was employed by Defendant County at ACJ as a physician's assistant.

9.  Defendant, Sandra Simms ("Simms"), is an adult female individual. Plaintiff believes, and therefore avers, that Defendant Simms is a resident of Allegheny County, Pennsylvania. At

2

all times relevant to this Complaint, Defendant Simms was employed by Defendant County at ACJ as a nurse practitioner.

10. Defendants, John/Jane Doe(s) 1 ("Doe(s) 1"), unknown in name, number or gender, were, at all times relevant to this Complaint, employed as medical staff at ACJ by Defendant County who had actual knowledge of Plaintiff's medical conditions, as more fully described below.

11. Defendant, Ashley Brinkman ("Brinkman"), is an adult female individual. Plaintiff believes, and therefore avers, that Defendant Brinkman is a resident of Allegheny County, Pennsylvania. At all times relevant to this Complaint, Defendant Brinkman was employed by Defendant County as Health Services Administrator, purporting to act within the full scope of her authority and office pursuant to the regulations, customs and usages of ACJ.

12. Defendant, Renee Madden ("Madden"), is an adult female individual. Plaintiff believes, and therefore avers, that Defendant Madden is a resident of Allegheny County, Pennsylvania. At all times relevant to this Complaint, Defendant Madden was employed by Defendant County as Deputy Health Services Administrator, purporting to act within the full scope of her authority and office pursuant to the regulations, customs and usages of ACJ.

13. Defendant, Orlando Harper ("Harper"), is an adult male individual. Plaintiff believes, and therefore avers, that Defendant Harper is a resident of Allegheny County, Pennsylvania. Defendant Harper was employed by Defendant County as the Warden of AJC, until September, 2023, purporting to act within the full scope of his authority and office pursuant to the regulations, customs and usages of ACJ.

14. Defendant, FNU D'Angelo ("D'Angelo"), is an adult male individual. Plaintiff believes, and therefore avers, that Defendant D'Angelo is a resident of Allegheny County, Pennsylvania.

At all times relevant to this Complaint, Defendant D'Angelo was employed by Defendant County as a correctional officer at ACJ.

15. Defendant, FNU Turner ("Turner"), is an adult male individual. Plaintiff believes, and therefore avers, that Defendant Turner is a resident of Allegheny County, Pennsylvania. At all times relevant to this Complaint, Defendant Turner was employed by Defendant County as a correctional officer at ACJ.

16. Defendants, John/Jane Doe(s) 2 ("Doe(s) 2"), unknown in name, number or gender were, at all times relevant to this Complaint, employed by Defendant County as correctional officers at ACJ.

17. Defendant, Hunter Sarver ("Sarver"), is an adult male individual. Plaintiff believes, and therefore avers, that Defendant Sarver is a resident of Allegheny County, Pennsylvania. At all times relevant to this Complaint, Defendant Sarver was employed by Defendant County as a correctional officer at ACJ.

## FACTUAL ALLEGATIONS

18. In or about 2010, Plaintiff suffered extensive nerve damage and was diagnosed with neuropathy, chronic neuropathic pain, and foot drop.

19. At that time, Plaintiff's physician prescribed the Plaintiff gabapentin to relieve his chronic pain and the side effects of his neuropathy.

20. Plaintiff's physician continued to prescribe him gabapentin up until his confinement at ACJ to treat his chronic pain and neuropathy.

21. Beginning in 2017, Plaintiff was incarcerated at ACJ.

22. At the time of Plaintiff's admission to ACJ, Defendant County and ACJ's medical staff, including, but not limited to, Defendants Schultz, Stanton, Simms, and/or Doe(s) 1, were made

aware of Plaintiff's medical diagnoses of neuropathy, chronic neuropathic nerve pain, and foot drop. ACJ's medical staff diagnosed the Plaintiff with chronic neuropathic nerve pain and prescribed the Plaintiff gabapentin.

23. Sometime thereafter, Defendants Schultz, Stanton, Simms, and/or Doe(s) 1 discontinued Plaintiff's prescription for gabapentin for a non-medical reason and instead prescribed the Plaintiff ineffective, cheaper medications, despite their actual knowledge of the Plaintiff's chronic nerve pain and foot drop.

24. Defendants Schultz, Stanton, Simms, and/or Doe(s) 1 have denied Plaintiff gabapentin for a range of non-medical reasons, which are documented in his medical records, including, but not limited to: falsely alleging that gabapentin was not in stock at ACJ or available on its formulary when it was, in fact, available; and alleging that gabapentin is not prescribed for neuropathic foot drop and nerve pain, when, in fact, it is, and has been prescribed to the Plaintiff in the past.

25. Instead, Plaintiff was prescribed ineffective over-the-counter Tylenol and Ibuprofen, which he is required to purchase from ACJ's commissary.

26. Plaintiff has actual knowledge of other inmates suffering from chronic nerve pain and neuropathic disorders that are prescribed gabapentin by Defendants Schultz, Stanton, Simms, and/or Doe(s) 1.

27. Plaintiff repeatedly notified Defendants County, Harper, Schultz, Stanton, Simms, and/or Doe(s) through several written grievances and through AJC written procedures about the ineffectiveness of substitute medications and his worsening nerve pain which was not alleviated by other medications.

28. Plaintiff also repeatedly notified Defendants Schultz, Stanton, Simms, and/or Doe(s) 1 orally about the ineffectiveness of substitute medications and his worsening nerve pain which was not alleviated by other medications.

29. Defendants County, Harper, Schultz, Stanton, Simms, and/or Doe(s) 1 were deliberately indifferent to the Plaintiff's need for gabapentin, and instead attempted to treat the Plaintiff with ineffective, cheaper medications, which they knew failed to alleviate his nerve pain and related deleterious symptoms, despite their actual knowledge of his severe and chronic nerve pain.

30. On April 27, 2022, an attorney representing the Plaintiff notified ACJ and Defendants County, Brinkman, and Madden that medical staff at ACJ had been deliberately indifferent to Plaintiff's nerve pain and/or medical conditions by their use of less effective medications, in lieu of gabapentin, which were failing to treat his nerve damage and causing him unnecessary pain.

31. Plaintiff's attorney requested that a healthcare provider examine the Plaintiff to assess his pain management needs.

32. Defendants County, Brinkman, and/or Madden never responded to the above-described communication and no healthcare provider assessed Plaintiff's nerve pain or the efficacy of ACJ's "treatment" of it, despite Plaintiff's request through his attorney.

33. Defendant County and/or Harper took no action, remedial or otherwise, in response to Plaintiff's grievances regarding his need for gabapentin, as described hereinbefore above.

34. Plaintiff's need for gabapentin to treat chronic pain was exacerbated following an unlawful use of force at ACJ by Defendants D'Angelo, Turner, and Doe(s) 2, as more fully described hereinafter below.

35. On or about September 16, 2022, Defendants D'Angelo, Turner, and Doe(s) 2 performed a strip search on the Plaintiff.

36. During that search, Plaintiff was handcuffed and, without provocation or justification, Defendants D'Angelo, Turner, and Doe(s) violently attacked the Plaintiff while he was naked and handcuffed.

37. Plaintiff was not acting in a dangerous manner, nor was he a threat to Defendants or any other individuals at the time of his unlawful assault.

38. Defendants D'Angelo, Turner, and/or Doe(s) 2 forced the Plaintiff onto the ground and repeatedly punched and kicked the Plaintiff's head, neck, and chest, while he was handcuffed.

39. Plaintiff did not resist the Defendants.

40. During the unlawful assault by Defendants D'Angelo, Turner, and/or Doe(s) 2, Plaintiff was on the ground, handcuffed, immobilized, naked, and in a prone position.

41. Defendants D'Angelo and Turner unlawfully tased the Plaintiff approximately four (4) times while the Plaintiff was on the ground, handcuffed, immobilized, naked, and in a prone position.

42. During the unlawful assault of the Plaintiff, Defendant D'Angelo used his full body weight to kneel on or around Plaintiff's right shoulder and upper arm area, forcefully pulled and twisted the Plaintiff's right arm away from the Plaintiff's body, and broke the Plaintiff's right arm.

43. Plaintiff experienced pain, numbness, and weakness in his right arm immediately following the unlawful assault.

44. Plaintiff reported the unlawful assault by Defendants D'Angelo, Turner, and Doe(s) to ACJ officials through ACJ's grievance procedures.

45.     Following the above-described unlawful assault of the Plaintiff, Plaintiff was held in a holding cell for approximately two (2) hours before he was taken to Allegheny General Hospital ("AGH").

46.     Plaintiff was assessed by several physicians at AGH. At that time, Plaintiff was diagnosed with a displaced comminuted fracture of shaft of humerus.

47.     On September 17, 2022, Plaintiff underwent orthopedic surgery consisting of plate-and-screw fixation.

48.     At that time, Plaintiff's physician prescribed him gabapentin.

49.     Thereafter, Plaintiff returned to ACJ.

50.     Upon arrival at ACJ after the Plaintiff's above-described hospitalization and surgery, Plaintiff was placed in a holding cell for approximately four (4) hours and then taken to solitary confinement.

51.     Despite Defendants County, Harper, Brinkman, Madden, Schultz, Stanton, Simms, and/or Doe(s) 1's knowledge of Plaintiff's above-described prescription for gabapentin, these Defendants discontinued Plaintiff's gabapentin prematurely, contrary to his physician's orders, and were deliberately indifferent to the Plaintiff's pain, upon his return to ACJ.

52.     As a result, Plaintiff suffered arm pain, weakness, tingling, and has had difficulty writing, sleeping, exercising, and completing other daily tasks.

53.     Plaintiff continues to experience nerve pain in his arm as a direct result of the actions of Defendants D'Angelo, Turner, and Doe(s) 2.

54.     Plaintiff again repeatedly notified Defendants County, Harper, Schultz, Stanton, Simms, and/or Doe(s) through written grievances of his worsening pain due to the discontinuance of his gabapentin prescription.

55. Additionally, in a letter dated July 5, 2023, Plaintiff's attorney again notified ACJ and Defendants County, Brinkman, and Madden that medical staff at ACJ continued to be deliberately indifferent to Plaintiff's nerve pain and/or medical conditions by their use of less effective medications, in lieu of gabapentin, which were failing to treat his nerve damage and causing him unnecessary pain.

56. On or about November of 2023, Plaintiff was prescribed gabapentin, several years after his initial prescription was discontinued by medical staff at ACJ, as described hereinbefore above.

57. Following the Plaintiff's unlawful assault by Defendants D'Angelo, Turner, and Doe(s) 2, Defendant Sarver began to harass the Plaintiff.

58. Defendant Sarver's harassment of the Plaintiff included, but was not limited to, performing strip searches of the Plaintiff, without justification, and subjecting the Plaintiff to solitary confinement, without justification.

59. Plaintiff filed grievances regarding the conduct of Defendant Sarver, as more fully described hereinbefore above.

60. Defendant Sarver continued to harass the Plaintiff, including, but not limited to, performing daily anal searches of the Plaintiff while the Plaintiff was in solitary confinement, without justification.

61. On one such occasion, in or about August of 2023, Defendant Sarver brought Defendants D'Angelo and Turner to the Plaintiff's cell.

62. At that time the Defendants bragged about intimidating the Plaintiff.

63. Defendant Sarver specifically stated that he did not care about the Plaintiff's attorney and dared the Plaintiff to sue the Defendants.

64. Plaintiff believes, and therefore avers, that Defendants Sarver, D'Angelo, and Turner took the above-described actions in order to harass, intimidate, and humiliate the Plaintiff and in retaliation for the Plaintiff filing grievances.

65. Plaintiff continued to file grievances for the above-described conduct of Defendant Sarver, D'Angelo, and Turner.

66. Defendant County and/or Harper took no action, remedial or otherwise, in response to Plaintiff's grievances, as described hereinbefore above.

67. Defendants County and/or Harper's actual knowledge of the harassment by Defendants Sarver, D'Angelo, and Turner constitutes deliberate indifference the rights of the Plaintiff.

68. Defendants Sarver, D'Angelo, and/or Turner continued to retaliate against the Plaintiff by placing the Plaintiff in solitary confinement and subjecting the Plaintiff to anal searches, predominately while the Plaintiff was in solitary confinement.

69. In or about December of 2023, Defendant Sarver responded to a code involving an altercation between inmates that did not involve the Plaintiff.

70. At that time, Defendant Sarver pointed his taser directly at the Plaintiff and instructed the Plaintiff to get on the ground, without any provocation or justification. Plaintiff was not involved in the aforementioned altercation nor was he near the altercation.

71. Defendant Sarver's actions caused the Plaintiff to be in fear of physical injury.

72. Plaintiff believes, and therefore avers, that Defendant Sarver pointed his taser at the Plaintiff in order to intimidate and harass the Plaintiff in retaliation for the Plaintiff's grievances, as described hereinbefore above.

73. Plaintiff continued to file grievances for the above-described conduct of Defendant Sarver, D'Angelo, and Turner.

74. Defendant County took no action, remedial or otherwise, in response to Plaintiff's grievances, as described hereinbefore above.

## COUNT I:

PLAINTIFF
v.
DEFENDANTS COUNTY, HARPER, BRINKMAN, MADDEN, SCHULTZ, STANTON, SIMMS, and DOE(S)1

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

<u>FAILURE TO PROVIDE ADEQUATE MEDICAL CARE</u>

75. Plaintiff incorporates by reference Paragraphs 1 through 74 as though fully set forth at length herein.

76. Plaintiff claims damages for the injuries set forth herein under 42 U.S.C. § 1983 against Defendants for violations of Plaintiff's constitutional rights under color of law.

77. At all times relevant hereto, pursuant to 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution, Plaintiff had the right to receive adequate medical care while he was incarcerated.

78. As more fully described hereinbefore above, Defendants Schultz, Stanton, Simms, and Doe(s) 1 failed to provide the Plaintiff with gabapentin, despite their actual knowledge of the Plaintiff's chronic nerve pain, other medical conditions and foot drop.

79. As more fully described hereinbefore above, Defendants' failure to provide adequate medical care to the Plaintiff and failure to prescribe gabapentin to the Plaintiff for his nerve pain constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

80. As described hereinbefore above, Defendants Harper, Brinkman, and Madden were notified, through grievances and attorney correspondence, of ACJ's medical staff failure to provide the Plaintiff with gabapentin for his pain and were deliberately indifferent to the Plaintiff's chronic and severe pain.

81. Defendants, and each of them, failed to provide Plaintiff with adequate medical care and failed to provide the Plaintiff with gabapentin, despite actual knowledge of his serious medical conditions and chronic nerve pain.

82. The actions of the individual Defendants were willful, wanton and/or done with a reckless disregard for the Plaintiff's rights, thereby subjecting the individual Defendants to punitive damages.

83. As a direct and proximate result of the acts described hereinbefore above, perpetrated by the Defendants, Plaintiff suffered the following injuries and damages:

    a. violation of his constitutional rights under 42 U.S.C. § 1983 and the Eighth Amendment;

    b. extreme physical pain and suffering;

    c. long lasting and continued medical issues;

    c. economic damages related to any and all legal, and/or other consequential costs; and

    d. such other damages as may become apparent through the discovery process.

WHEREFORE, Plaintiff demands compensatory general damages against Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against individual Defendants, and each of them;

and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT II:

PLAINTIFF v. DEFENDANTS D'ANGELO, TURNER, AND DOE(S) 2

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AMENDMENT
TO THE UNITED STATES CONSTITUTION

EXCESSIVE FORCE

84. Plaintiff incorporates by reference Paragraphs 1 through 83 as though fully set forth at length herein.

85. Plaintiff claims damages for the injuries set forth herein under 42 U.S.C. §1983 against the above-captioned Defendants for violations of Plaintiff's constitutional rights under color of law.

86. At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution, Plaintiff had the right to be free from excessive, unreasonable and unjustified force by the Defendants.

87. As more fully described hereinbefore above, Defendants D'Angelo, Turner, and Doe(s) 2 unlawfully assaulted the Plaintiff during a strip search, while the Plaintiff was handcuffed, naked, and in a prone position on the ground.

88. The excessive, unreasonable and unjustified force used by Defendants D'Angelo, Turner and Doe(s) 2 against the Plaintiff constituted a violation of Plaintiff's rights as guaranteed under the Eighth Amendment to the United States Constitution.

89. At no time during the excessive and illegal conduct by Defendants D'Angelo, Turner, and Doe(s) 2 was the Plaintiff an immediate threat to the safety of the Defendants or any other individual.

90. At no time were the excessive actions of Defendants D'Angelo, Turner, and Doe(s) reasonable or warranted.

91. Furthermore, the excessive and aggressive actions of the individual Defendants directly resulted in the Plaintiff suffering severe and ongoing physical damage

92. The individual Defendants' actions were willful, wanton and/or done with a reckless disregard for the rights of the Plaintiff, thereby subjecting Defendants to punitive damages.

93. The named Defendants, and each of them, acted under the color of law and their actions constituted an arbitrary and unconscionable abuse of government authority.

94. As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, and each of them, Plaintiff suffered the following injuries and damages:

   a. violation of Plaintiff's constitutional rights under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution;

   b. extreme physical pain and suffering;

   c. fright, horror and shock;

   d. emotional trauma and suffering; and

   e. economic damages related to any and all medical and/or other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual

Defendants, and each of them; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT III:

PLAINTIFF v. DEFENDANTS SARVER, D'ANGELO, and TURNER

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, 42 U.S.C. §1983 AND THE FIRST AMENDMENT
TO THE UNITED STATES CONSTITUTION

RETALIATION

95. Plaintiff incorporates by reference Paragraphs 1 through 94 as though fully set forth at length herein.

96. Plaintiff claims damages for the injuries set forth herein under 42 U.S.C. § 1983 against Defendants for violations of Plaintiff's constitutional rights under color of law.

97. At all times relevant hereto, pursuant to 42 U.S.C. § 1983 and the First Amendment to the United States Constitution, Plaintiff had the right to be free from retaliation for engaging in a protective activity, to wit, filing grievances, as more fully described hereinbefore above.

98. As more fully described hereinbefore above, Defendants Sarver retaliated against the Plaintiff for filing grievances against Defendants Sarver, D'Angelo, and Turner by placing the Plaintiff in solitary confinement and performing daily anal searches of the Plaintiff.

99. As more fully described hereinbefore above, Defendant Sarver pointed a taser at the Plaintiff, without provocation or justification.

100. As described hereinbefore above, Defendants Sarver, Defendants D'Angelo, and Turner bragged about intimidating the Plaintiff. Defendant Sarver stated that he did not care about the Plaintiff's attorney and dared the Plaintiff to sue the Defendants.

101.   Plaintiff believes, and therefore avers, that Defendants took the above-described actions in order to harass, intimidate, and humiliate the Plaintiff and in retaliation for the Plaintiff filing grievances.

102.   As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, and each of them, Plaintiff suffered the following injuries and damages:

      a.    violation of his constitutional rights under 42 U.S.C. § 1983 and the First Amendment;

      b.    fright, horror and shock;

      c.    emotional trauma and suffering; and

      d.    economic damages related to any and all medical and/or other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants, and each of them; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

                                          JURY TRIAL DEMANDED

COUNT IV:

PLAINTIFF v. DEFENDANT SARVER

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FOURTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

UNLAWFUL SEARCH

103. Plaintiff incorporates by reference Paragraphs 1 through 102 as though fully set forth at length herein.

104. Plaintiffs claim damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendant Sarver for violations of Plaintiff's constitutional rights under color of law.

105. At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution, Plaintiff had the right to be free from an unlawful search of his person.

106. As more fully described hereinbefore above, Defendant Sarver intentionally and recklessly performed an unlawful anal search of the Plaintiff's person without any justification to do so.

107. Performing an anal search on the Plaintiff without justification constitutes malice on the part of Defendant Sarver.

108. Defendant Sarver acted under the color of law and their actions constituted an arbitrary and unconscionable abuse of government authority.

109. As a direct and proximate result of the acts described hereinbefore above perpetrated by Defendant Sarver, Plaintiffs suffered the following injuries and damages:

    a. violation of their constitutional rights under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution;

    b. fright, horror and shock;

  c. emotional trauma and suffering; and

  d. economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff demand compensatory general damages against Defendant Sarver in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against Defendant Sarver; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT V:

PLAINTIFF v. DEFENDANTS D'ANGELO, TURNER, SARVER, AND DOE(S) 2

VIOLATION OF PLAINTIFF'S RIGHTS UNDER
PENNSYLVANIA COMMON LAW

<u>ASSAULT AND BATTERY</u>

110. Plaintiff incorporates by reference Paragraphs 1 through 109 as though fully set forth at length herein.

111. As described hereinbefore above, Defendants D'Angelo, Turner, and Doe(s) 2 intentionally, willfully, and maliciously attacked and tased the Plaintiff while the Plaintiff was on the ground, handcuffed, immobilized, naked, and in the prone position.

112. As more fully described hereinbefore above, Defendant Sarver subjected the Plaintiff to anal searches, without provocation or justification.

113. As more fully described hereinbefore above, Defendant Sarver pointed a taser at the Plaintiff without any justification to do so, causing the Plaintiff to fear physical injury.

114. At no time were the actions of Defendants D'Angelo, Turner, Doe(s), and Sarver reasonable or warranted.

115. The individual Defendants' actions were willful, wanton and/or done with a reckless disregard for the rights of the Plaintiff, thereby subjecting Defendants to punitive damages.

116. As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, and each of them, Plaintiff suffered the following injuries and damages:

    a.    violation of Plaintiff's rights under the Common Law of Pennsylvania;

    b.    extreme physical pain and suffering;

    c.    fright, horror and shock;

    d.    emotional trauma and suffering; and

    e.    economic damages related to any and all medical and/or other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants, and each of them; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

                                          JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

<u>s/ Joel S. Sansone</u>
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
*Counsel for Plaintiff*

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: February 6, 2024