IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AARON TIPTON,                                    Civil Action

Plaintiff,                                       No. 2:24-cv-00156

v.

ALLEGHENY COUNTY, et al.,

Defendants.

## BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Pursuant to FED. R. CIV. P. 12(b)(6), Defendants Allegheny County, Orlando Harper, Renee Madden, Ashley Brinkman, and Hunter Sarver, file this BRIEF IN SUPPORT OF MOTION TO DISMISS.

## I.  FACTS

The Plaintiff, Aaron Tipton has filed an Amended Complaint against Defendant Allegheny County (County), Orlando Harper, Renee Madden, Ashley Brinkman, and Hunter Sarver in Western District Court. ECF 26.  Plaintiff alleges that the Defendants violated his First, Fourth and Eighth Amendment Rights. ECF 26.

Plaintiff alleges that beginning in 2017 and throughout the times set forth in his Complaint, he was incarcerated at the Allegheny County Jail (ACJ). ECF 26, ¶22. Plaintiff alleges that upon admission to the ACJ, medical staff, "including Defendants Schultz, Stanton, Simms and Doe(s) 1," were made aware of Plaintiff's numerous medical conditions. (ECF 26, ¶23). Those same Defendants were alleged to have changed Plaintiff's medication for various reasons. (ECF 26, ¶¶25-27). It is alleged that Plaintiff notified those Defendants as well as Defendants County and Harper that the substitute

medication was ineffective. (ECF 26, ¶28).    Plaintiff alleges that on April 27, 2022, an attorney representing Plaintiff notified Defendant County, Brinkman, and Madden that medical staff at the ACJ had changed his medication and believed that it was less effective. (ECF 26, ¶35). Plaintiff alleges that no remedial action was taken. (ECF 26, ¶37). Plaintiff alleges he also filed grievances and that no remedial action was taken. (ECF26, ¶38).

Plaintiff alleges that he was subsequently assaulted by Defendants D'Angelo and Turner exacerbating his need for the medication. (ECF 26, ¶¶40-46). Plaintiff alleges that he was diagnosed with a fractured humerus by doctors at Allegheny General Hospital (AGH) as a result of the assault. (ECF 26, ¶51). Plaintiff alleges that he was again discontinued from his medication by medical defendants. (ECF 26, ¶56).

Plaintiff alleges that after the assault, he began to be harassed by a different corrections officer, Defendant Hunter Sarver. (ECF 26, ¶62). Plaintiff alleges that the harassment included unjustified strip searches and placement into solitary confinement. (ECF 26, ¶ 63). Plaintiff provides no specificity with regard to these alleged searches.

Plaintiff alleges that in August 2023, Sarver brought Defendants D'Angelo and Turner to his cell. (ECF 26, ¶66). Plaintiff alleges that Defendants "took the above-described actions in order to harass, intimidate, and humiliate the Plaintiff and in retaliation for the Plaintiff filing grievances." (ECF 26, ¶69). Plaintiff alleges that he filed grievances for that conduct. (ECF 26, ¶70).

Plaintiff alleges that in another instance, that during an altercation that did not involve Plaintiff, "Sarver pointed his taser directly at the Plaintiff and instructed the Plaintiff to get on the ground." (ECF 26, ¶75).  Plaintiff alleges that Sarver pointed his

taser at Plaintiff to intimidate and harass him to retaliate against him for filing grievances. (ECF 26, ¶77). Plaintiff alleges that the County took no remedial actions for any of the alleged conduct of Corrections Officers.

Plaintiff has failed to state a claim against Defendants Allegheny County, Orlando Harper, Renee Madden, and Hunter Sarver and the case should be dismissed with prejudice as to them.

## II. LEGAL STANDARD

When deciding a motion to dismiss a complaint for failure to state a claim, a court must accept as true all well-pled facts in the complaint but may disregard legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A complaint must be dismissed pursuant to FED. R. CIV. P. 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007). The court must accept all factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Id*. at 555.

However, the court need not accept all legal conclusions set forth as factual allegations. *Id*. In fact, mere conclusions or labels are insufficient to state a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).

A claim is plausible on its face if its facts allow the court to draw the reasonable inference, not just a possibility, that the defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678-79. To be plausible, a pleader must do more than simply make a "bare averment that he wants relief and is entitled to it." *Phillips v. County of Allegheny*, 515 F.3d 224, 224 (3d Cir. 2008). "Labels, conclusions and a formulaic recitation of the

elements of a cause of action" will not suffice.  Id. at 232.  If the facts as alleged do not state a plausible claim, the motion to dismiss should be granted. *Iqbal*, 556 U.S. at 679.

### III.   ARGUMENT

#### A. Deliberate Indifference

Plaintiff's claim fails to show such deliberate indifference to a serious medical need and the claim therefore fails.

Plaintiff's complaint alleges Cruel and Unusual Punishment for failure to provide adequate medical care. (ECF 26, ¶¶ 80-90). It is well-established that inmates do not have a constitutionally protected right to a prison grievance system. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 469 (M.D. Pa. 2010).

With regard to Defendants Harper, Brinkman, and Madden, Plaintiff alleges that he notified Harper, Brinkman, and Madden of a medical decision made medical providers to use a different medication against his wishes. (ECF 26, ¶ 28-32). A prisoner bringing a medical-needs claim "must show more than negligence; he must show 'deliberate indifference' to a serious medical need." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)(Warden and corrections commissioner were not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.")  "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). A "failure to provide adequate care . . . [that] was deliberate and motivated by non-medical factors" is actionable under the Eighth Amendment, but "inadequate care [that] was a result of an

4

error in medical judgment" is not. *Durmer*, 991 F.2d at 69.

Plaintiff may not have agreed with the care he was receiving but Plaintiff's claims do not rise to the level of cruel and unusual punishment. In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Plaintiff alleges that Defendants Schultz, Stanton and Sims are medical professionals. (ECF 26, ¶¶7-9). Plaintiff alleges in his complaint that he was seen by someone from medical and that medical personnel made decisions that were documented in the medical record that Plaintiff disagreed with. (ECF 26, ¶¶ 23-27).

Plaintiff does not allege that Harper, Brinkman, or Madden provided medical treatment. Plaintiff only alleges that Plaintiff notified Defendant County, Brinkman, and Madden that medical staff at the ACJ had changed his medication and believed that it was less effective. (ECF 26, ¶30). Plaintiff alleges he filed grievances and that no remedial action was taken. (ECF 26, ¶38).

> The denial of Plaintiff's grievances does not, in itself, satisfy the requisite "personal involvement" requirement. *Mincy v. Chmielsewski*, 508 Fed.App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Rogers v. United States*, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.")

*Williams,* 2018 WL 3653272, at \*3. *See, Holden v. Wetzel*, 2021 WL 1090638 and *See also*, *Hall v. SCI Fayette*, 2023 WL 2867862.

Plaintiff cannot establish personal liability for Harper, Brinkman, or Madden by virtue of their having received and reviewed Plaintiff's complaints about medical care and not receiving the desired result. Plaintiff cites a letter alleging that Defendants were provided a letter that described the "treatment" in quotes that Plaintiff was receiving. The letter even stated to Defendants County, Brinkman and Madden that Plaintiff was indeed being treated by medical.

The facts as plead, do not rise to the level of deliberate indifference on the part of either Defendants Harper, Brinkman, or Madden.

**B. Qualified Immunity**

Qualified immunity is a shield for government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what the individual is doing violates that right. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044, (2015).  Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Id.

Plaintiff's Amended Complaint alleges no action was taken by either Defendant Harper, Brinkman, or Madden. (ECF 26, ¶ 37). However, Plaintiff alleges that the Defendants were merely notified that medical staff was treating Plaintiff. (ECF 26, ¶ 35). It is not alleged that Plaintiff took any actions contrary to what medical personnel employed at the jail recommended.

As pled, the facts cannot be interpreted to show that Defendants Harper, Brinkman, or Madden believed they were violating the Plaintiff's rights. Plaintiff makes no allegation that County Defendants did anything that would knowingly violate Plaintiff's constitutional rights. Defendants Harper, Brinkman and Madden should be dismissed in their individual capacities.

### C. Supervisory Liability

A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Additionally, the factual averments contained within a complaint must demonstrate "more than a sheer possibility that . . . a defendant has acted unlawfully." *Iqbal* at 678. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. *Rode* at 1207.

Plaintiff's must show more than that Defendants Harper and Madden had knowledge of the Plaintiff's condition. Personal involvement may be proven not only by showing that the defendant had actual, direct involvement in the violation, but also through proof of personal direction or of actual knowledge and acquiescence in the violation. *Id.* To prove personal involvement through acquiescence requires that a plaintiff demonstrate that the defendant had contemporaneous knowledge of the alleged wrongdoing, and actual supervisory authority over the alleged violator. *Robinson v. Pittsburgh*, 120 F.3d 1286, 1293–94 (3d Cir.1997). Allegations of participation or actual

knowledge and acquiescence, however, must be made with appropriate particularity. *Rode,* at 1207.

There is no claim made by the Plaintiff that Defendants Harper, Brinkman or Madden had any personal involvement in any of the alleged unlawful actions. There is no allegation of any acquiescence and no such particularity that Plaintiff pleads relating to Defendants Harper, Brinkman or Madden.

In order for a supervisory official to be found legally responsible for a violation of plaintiff's constitutional rights, the official "must have played an affirmative role in the deprivation of the plaintiffs' rights...the officials' misconduct cannot be merely a failure to act." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). This is exactly how Plaintiff is attempting to hold County Defendants liable.

Plaintiff alleges numerous times throughout the complaint that "Plaintiff believes, and therefore avers, that the conduct of these Defendants is the direct result of adhering to a policy, procedure and/or custom of..." (ECF 26, ¶¶ 31, 32) or "Plaintiff believes, and therefore avers, that Defendants Harper, Brinkman and/or Madden were responsible for implementing and/or acquiescing to a policy, procedure and/or custom" (ECF 26, ¶¶33, 34). This is not language of an individual defendant acting in their individual or personal capacity. While Defendants do not concede that Plaintiff has successfully plead a Monell claim, this language is an attempt to make such a claim.

The United States Supreme Court has clarified that:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action

against an entity of which an officer is an agent." As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (*citations omitted*). As a result, the Supreme Court explained that, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under [*Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978)], local government units can be sued directly for damages." *Id*. at 167 n. 14.

Plaintiff's Amended Complaint does not allege any personal involvement of Defendants Harper, Brinkman or Madden to set forth a claim in any of their individual capacities.

Therefore, all claims against Defendants Harper, Brinkman and Madden should be dismissed.

### D. Plaintiff Fails to State a Claim Against Allegheny County.

The bulk of Plaintiff's amendment to his original complaint is alleging that "Defendants Harper, Brinkman and/or Madden were responsible for" either implementing, adhering to and/or acquiescing to a policy, procedure and/or custom related to the medical care "within the ACJ." ECF 26, ¶¶ 31-34, 87-88.

Section 1983 is not a source of federal rights. It is merely a means for vindicating constitutional and federal statutory rights, i.e. a means for an injured party to sue state officials who infringe upon those rights. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed. 114 (1994). In any § 1983 lawsuit, the plaintiff must initially show that he

was "deprived . . . of a right secured under the Constitution or federal law" in order to recover. *Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir. 1993), cert. den. 510 U.S. 976, 114 S.Ct. 468, 126 (1993).

To evaluate a section 1983 claim, the first step is to "identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Brown v. Borough of Mahaffey*, 35 F.3d 846, 850 (3d Cir. 1994).

Assuming that plaintiff has identified a deprivation of a constitutional right, in order for a suit against a political subdivision to be viable, Plaintiff must then show that the conduct of an actor from that political subdivision, pursuant to its policy or custom, must cause that constitutional violation. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978).

A Plaintiff cannot sustain a claim for municipal liability if he or she fails to show a defendant municipality's policy or custom that causes his or her constitutional violation. *Smith v. Municipality of Lycoming County*, 2006 WL 1793228 (M.D.Pa. 2006*); Parent v. Roth*, 2001 WL 1243563 (E.D.Pa. 2001) (municipal liability not found where record evidence did not identify policy or custom); *Gagliardi v. County of Allegheny*, 2007 WL 838971 (W.D.Pa. 2007) (County's motion for summary judgment granted); *Newsome v. Howard*, 2008 WL 399655 (D.Del. 2008) (motion to dismiss granted where complaint failed to allege a policy or custom caused a constitutional violation).

Plaintiff, with no supportive facts, merely makes the broad claim that Defendants Harper, Brinkman and/or Madden were responsible for implementing and/or

acquiescing to a policy, procedure and/or custom of withholding or minimizing the adequacy of medical care within ACJ to control and contain the cost of medical services. (ECF 26, ¶33). Plaintiff also alleges that the conduct of the medical defendants was a "direct result of adhering to a policy, procedure and/or custom of providing inadequate treatment and/or accommodation to inmates with serious medical needs and/or disabilities."

Plaintiff makes these bare bones assertions that it was the policy, procedure and/or custom of providing inadequate treatment and/or accommodation to inmates with serious medical needs and/or disabilities. ECF 26, ¶32. However, the court need not accept all legal conclusions set forth as factual allegations. *Twombly,* at 556.  In fact, mere conclusions or labels are insufficient to state a cause of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).

Plaintiff has simply not pled enough to sustain a claim against Allegheny County.

### E.  Plaintiff has not pled an ADA Claim.

Count II of Plaintiff's Complaint attempts to allege an ADA violation against County, Harper, Brinkman and Madden.

Title II of the Americans with Disabilities Act (ADA) Title II of the ADA provides in relevant part: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12121.  The Third and other federal circuits have concluded that there is no right to sue for individual capacity liability under Title II of the ADA. *Bowens v.*

*Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017).

Nor does the official capacity claim survive. To state a violation of the ADA, Plaintiff must allege facts plausibly indicating that he was denied benefits or services on account of his disability.  See *Riboldi v. Warren Cnty. Dep't of Hum. Servs. Div. of Temp. Assistance* & Soc. Servs., 781 F. App'x 44, 46 (3d Cir. 2019)(citing to *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018).

Plaintiff does not identify the disability that he has nor what accommodation he was seeking. He merely pleads with no specificity that the Defendants were "adhering to a policy, procedure and/or custom of providing inadequate treatment and/or accommodation to inmates with serious medical needs and/or disabilities." (ECF 26, ¶32).

### F.  **Plaintiff fails to state a claim for retaliation against Defendant Sarver**

The elements of a retaliation claim are: "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his [constitutional] rights and the adverse action taken against him." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 566 F. App'x 113, 117 (3d Cir. 2014).

The requisite causal connection can be demonstrated by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 566 F. App'x 113, 117 (3d Cir. 2014).

Correctional officials must be permitted to devise reasonable search policies to

detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012) (quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of retained constitutional rights of both convicted prisoners and pretrial detainees")). Courts will ordinarily defer to the judgment of correction officials on whether a strip search policy is reasonably related to legitimate security interests. *Id*. (citations omitted).

Plaintiff alleges that in one instance, that during an altercation that did not involve Plaintiff, "Sarver pointed his taser directly at the Plaintiff and instructed the Plaintiff to get on the ground." (ECF 26, ¶75). Plaintiff alleges that Sarver pointed his taser at Plaintiff to intimidate and harass him to retaliate against him for filing grievances. (ECF 26, ¶77). Plaintiff in this instance has not articulated either the second or third element of a retaliation claim. Plaintiff has not described any injury that occurred nor any temporal proximity to any constitutionally protected conduct. Plaintiff alleges that the harassment included unjustified strip searches and placement into solitary confinement. (ECF 26, ¶63). Plaintiff has not alleged that the action taken by Officer Sarver was outside the deference that should be given to Correction Officials when dealing in security issues described below.

Plaintiff alleges that in another instance, that during an altercation that did not involve Plaintiff, "Sarver pointed his taser directly at the Plaintiff and instructed the Plaintiff to get on the ground." (ECF 26, ¶75). Plaintiff alleges that Sarver pointed his

taser at Plaintiff to intimidate and harass him to retaliate against him for filing grievances. (ECF 26, ¶77). Having a taser pointed at them while incarcerated during an altercation is not an action that would deter a person from exercising his constitutional rights. Additionally, Plaintiff has failed to set forth any time frame for when a grievance was filed and when and when the alleged retaliatory actions were taken. In fact, Plaintiff also fails to allege that Sarver was aware of any of the grievances were filed against him. Plaintiff simply cannot show a causal link between the exercise of his rights and any adverse action taken against him.

Regarding Plaintiff's alleged unjustified strip searches and placement into solitary confinement. (ECF 26, ¶65). Plaintiff provides no specificity with regard to these alleged searches. Plaintiff fails to set forth any timeframe in which the alleged placement into solitary confinement or strip searches occurred. Again, without a timeframe, Plaintiff cannot show the necessary causal link between the exercise of his rights and the alleged actions taken against him. The requisite causal connection can be demonstrated by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Williams* at 117. Plaintiff alleges no such proximity.

Plaintiff's complaint ranges from 2017 (ECF 26, ¶18) through November of 2023 (ECF 26, ¶61). Plaintiff fails to set forth any dates and times at which Defendant Sarver either placed Plaintiff in solitary confinement or subjected him to strip searches. Plaintiff does allege that an assault occurred that was perpetrated by Defendants D'Angelo and Turner on September 16, 2022. (ECF 26, ¶40). Plaintiff alleges that almost 1 year later, in

14

August 2023, Sarver brought D'Angelo and Turner to Plaintiff's cell to intimidate him. (ECF 26, ¶¶66-69). While there is no date given for when grievances were filed, the passage of almost one year is not "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action." **Corrections officials should be given wide deference when dealing in issues concerning prison administration.**

In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, "we think that the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872, 60 L. Ed. 2d 447 (1979)

"[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations. There must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Bell* at 545.

> This principle applies equally to both pretrial detainees and sentenced inmates. A detainee simply does not possess the full range of freedoms of an incarcerated individual." Id. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible while he is incarcerated does not convert the conditions or restrictions of detention into punishment.

*Id.* at 537.

Plaintiff alleges that the harassment included unjustified strip searches and placement into solitary confinement. (ECF 26, ¶65). Plaintiff provides no specificity with regard to these alleged searches. Plaintiff fails to set forth any timeframe in which the alleged placement into solitary confinement or strip searches occurred.

Plaintiff alleges that in another instance, that during an altercation that did not involve Plaintiff, "Sarver pointed his taser directly at the Plaintiff and instructed the Plaintiff to get on the ground." (ECF 26, ¶75). Plaintiff alleges that Sarver pointed his taser at Plaintiff to intimidate and harass him to retaliate against him for filing grievances. (ECF 26, ¶77). Plaintiff only alleges that he was not involved in the altercation and does not allege any other facts surrounding the incident where Officer Sarver took the above-described security measure. The actions taken by Officer Sarver were clearly security related and within Officer Sarver discretion, especially given the lack of physical contact with Plaintiff and the fact that Plaintiff has not alleged that any injury occurred as a result of the actions taken by Officer Sarver.

For these reasons, Plaintiff fails to state a claim against Officer Sarver in his individual capacity for which relief can be granted.

## IV.    CONCLUSION

For the foregoing reasons, Allegheny County respectfully requests that this Honorable Court grant their Motion to Dismiss and dismiss Defendants Allegheny County, Orlando Harper, Renee Madden, Ashley Brinkman, and Hunter Sarver.

Respectfully submitted,

16

_**/s/ Dennis Biondo, Jr.**_
Dennis Biondo, Jr.
Assistant County Solicitor
Pa. I.D. #307908

ALLEGHENY COUNTY LAW DEPARTMENT
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
(412) 350-1053

Dated:   August 9, 2024

17

## CERTIFICATE OF SERVICE

I, Dennis Biondo, Jr., Assistant County Solicitor, do hereby certify that a true and correct copy of the BRIEF IN SUPPORT OF MOTION TO DISMISS was served electronically upon all counsel of record:

Elizabeth Tuttle, Esquire
Joel Sansone
Two Gateway Center
Suite 1290
Pittsburgh, PA 15202


Shannon Voll Poliziani, Esquire
707 Grant Street, Suite 3800
Pittsburgh, PA 15219
svpoliziani@grsm.com


/s/ Dennis Biondo Jr.
Dennis Biondo, Jr.
Assistant County Solicitor
Date: August 8, 2024

18