## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | | |
|---|---|---|
| AARON TIPTON, | ) | Civil Action No. 2:24-cv-00156 |
| | ) | |
| Plaintiff, | ) | United States District Judge |
| | ) | J. Nicholas Ranjan |
| vs. | ) | |
| | ) | United States Magistrate Judge |
| LORI SCHULTZ, ESTHER STANTON, | ) | Christopher B. Brown |
| SANDRA SIMMS, JOHN/JANE DOE(S) | ) | |
| 1, ASHLEY BRINKMAN, RENEE | ) | |
| MADDEN, ORLANDO HARPER, FNU | ) | |
| D'ANGELO, FNU TURNER, HUNTER | ) | |
| SARVER, JOHN/JANE DOE(S) 2, | ) | |
| ALLEGHENY COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION
### ON MOTIONS TO DISMISS (ECF Nos. 33 and 37)

**Christopher B. Brown, United States Magistrate Judge**

## I.    Recommendation

This case began on February 6, 2024, by the filing of a counseled Complaint on behalf of Plaintiff Aaron Tipton ("Tipton"). The claims giving rise to this lawsuit occurred while Tipton was incarcerated at Allegheny County Jail. ("ACJ"). He asserts claims for violations of his federal rights under the First, Fourth, and Eighth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983, as well as violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 – 12213. He also asserts state-law claims of assault and battery.

The named defendants can be grouped into three categories: (1) Allegheny County and six individual former or current Allegheny County employees, Orlando Harper, the former Warden of ACJ; Ashley Brinkman, the Health Services Administrator; Renee Madden, the Deputy Health Services Administrator; and three ACJ corrections officers, FNU Turner, FNU D'Angelo, and Hunter Sarver, ECF No. 26, ¶¶ 6, 11-15, 17; (2) Defendants Esther Stanton, a physician's assistant, and Sandra Simms, a nurse practitioner, employed at ACJ, *id.*, ¶¶ 8-9; and (3) Lori Schultz, a nurse practitioner employed at ACJ, *id.*, ¶ 7. He has also named John/Jane Doe(s) 1, who were employed as medical staff at ACJ, *id.*, ¶ 10; and John/Jane Doe(s) 2, correctional officers at ACJ, *id.*, ¶ 16.

The Amended Complaint does not indicate whether Tipton has sued the individuals Defendants in their individual or official capacities, or both.

The Amended Complaint organizes Tipton's legal claims into six counts:

> Count I:  Eighth Amendment failure to provide adequate medical care claims against Allegheny County, Harper, Brinkman, Madden, Schultz, Stanton, Simms, and Doe(s) 1, ECF No. 26, ¶¶ 80-90;
>
> Count II:  ADA and Eighth Amendment claims for failure to accommodate against Allegheny County, Harper, Brinkman, Madden, Schultz, Stanton, Simms, and Doe(s) 1; *id.*, ¶¶ 91-100;
>
> Count III: Fourth Amendment excessive force claim against Defendants D'Angelo, Turner, and Doe(s) 2; *id.*, ¶¶ 101-111;
>
> Count IV:  First Amendment retaliation claims against Defendants Sarver, D'Angelo, and Turner; *id.*, ¶¶ 112-121;
>
> Count V: Fourth Amendment unlawful search claim against Defendant Sarver; *id.*, ¶¶ 122-128; and

> Count VI: Pennsylvania state law tort claims for assault and battery
> against Defendants D'Angelo, Turner, Sarver, and Doe(s) 2; *id*., ¶¶ 129-
> 135.

Tipton seeks compensatory damages against all defendants and punitive damages against the individual defendants. *Id*., at 22.

The Court has federal question jurisdiction as the federal claims are brought under 42 U.S.C. § 1983 and Title II of the ADA, *see* 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1337.

Pending before the Court are two motions to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6): a partial motion to dismiss filed by the Allegheny County and individual defendants Harper, Brinkman, Madden, Sarver and Turner (together, the County Defendants), ECF No. 33, and a motion to dismiss all claims filed by Defendants Stanton and Simms, ECF No. 37. Tipton filed responses in opposition to both motions. ECF Nos. 48 and 49. The motions are fully briefed and ripe for consideration.

For the reasons below, it is respectfully recommended as follows:

1. The motion filed by the County Defendants be granted in part and denied in part. The motion be granted to the extent Tipton has brought an ADA claim against the County Defendants in their individual capacities. In all other respects, the motion be denied.

2. The motion filed by Defendants Stanton and Simms be granted in part and denied in part. The motion be granted without objection to the ADA claims

against Defendants Stanton and Simms.  In all other respects, the motion be denied.

## II.    Report

### a.    Factual Background

Tipton's allegations are set forth in the Amended Complaint and are accepted as true with all reasonable inferences drawn in the light most favorable to Tipton. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008).

### i.    Allegations Related to Tipton's Medical Treatment

Tipton claims he suffered extensive nerve damage in 2010 and, as a result, was diagnosed with neuropathy, chronic neuropathic pain, and footdrop.  ECF No. 28*,* ¶ 18.  These conditions "substantially limit [his] ability to perform major life activities, including, but not limited to, walking and sleeping."  *Id.,* ¶ 19.  His physician prescribed him gabapentin for chronic pain and for the side effects of his neuropathy.  *Id.,* ¶ 20.  Tipton continued to take the gabapentin until his prescription was discontinued by ACJ medical personnel.  *Id.,* ¶ 21.

When Tipton arrived at ACJ in 2017, he originally was prescribed gabapentin by ACJ medical staff.[1]  *Id.,*  ¶¶ 23-26.  Sometime later, Defendants Schultz, Stanton, Simms, and/or Doe(s) 1 discontinued the prescription for gabapentin and prescribed him over-the-counter Tylenol and ibuprofen.  *Id.,* ¶ 25.  He alleges the change in medication was for non-medical reasons, including "falsely alleging that gabapentin was not in stock at ACJ or available on its formulary when it was, in

---

[1]     It is unclear from the Amended Complaint who from the ACJ medical staff prescribed Tipton the gabapentin.

fact, available; and alleging that gabapentin is not prescribed for neuropathic foot drop and nerve pain, when, in fact, it is, and has been prescribed to the Plaintiff in the past." *Id.,* ¶ 26.  He also alleges he had to buy the Tylenol and ibuprofen from the commissary suggesting the prescription change was a cost-saving measure for the Defendants. *Id.,* ¶ 27.

Tipton "repeatedly" notified Allegheny County, Harper, Schultz, Stanton, Simms, and/or Doe(s) 1 through written grievances and the ACJ's written procedures that Tylenol and ibuprofen were ineffective "substitute medications," which did not alleviate his worsening nerve pain. *Id.,* ¶ 28.  Tipton also "repeatedly" notified Defendants Schultz, Stanton, Simms, and/or Doe(s) 1 orally about the ineffectiveness of the new medication.

On April 27, 2022,[2] Tipton's attorney notified ACJ, Allegheny County, and Defendants Brinkman and Madden[3] "that medical staff at ACJ had been deliberately indifferent to Plaintiff's nerve condition by their use of less effective medications, in lieu of gabapentin, which were failing to treat his nerve damage and causing him unnecessary pain." *Id.,*¶ 35.  It was requested that Tipton be examined by a healthcare provider to "assess his pain management needs." *Id.,* ¶ 36.  Tipton contends Allegheny County, Brinkman, and/or Madden never responded and no

---

[2]    The Amended Complaint states Tipton arrived at ACJ in 2017 and repeatedly notified Defendants of his complaints about the change in his prescription and his worsening nerve pain. The next date referenced in the Amended Complaint is April 27, 2022.  It is unclear if Tipton was continually incarcerated at ACJ during this intervening period.

[3]    It is unclear whether Defendant Harper also received this notification.

healthcare provider assessed his "nerve pain or the efficacy of ACJ's 'treatment' of it." *Id.*, ¶ 37.

About five months later, on or about September 16, 2022, Tipton was "violently attacked" by County Defendants D'Angelo, Turner, and Doe(s) 2. He was transported to Allegheny General Hospital and diagnosed "with a suffered a "displaced communited fracture of [the] shaft of [his] humerus." *Id.*, ¶ 51. He had orthopedic surgery the next day and again was prescribed gabapentin for pain. *Id.*, ¶¶ 51-53.

After being discharged from the hospital, Tipton was transferred back to ACJ. He contends that, contrary to physician's orders, Allegheny County and Defendants Schultz, Stanton, Simms, and/or Doe(s) 1 again discontinued his gabapentin prescription. *Id.*, ¶ 56. As a result, he suffered arm pain, weakness, tingling, and had difficulty writing, sleeping, exercising, and completing other daily tasks. *Id.*,¶ 57. Tipton "repeatedly" notified Allegheny County, Harper, Schultz, Stanton, Simms, and/or Doe(s) 1 through written grievances of his worsening pain because of the discontinuance of his gabapentin prescription. *Id.*,¶ 59.

In a letter dated July 5, 2023, Tipton's attorney notified ACJ and Defendants Allegheny County,[4] Brinkman, and Madden that the medical staff was continuing to be deliberately indifferent to Tipton's nerve pain condition by their use of less effective medications, in lieu of gabapentin, which were failing to treat his nerve

---

[4]    Again, it is unclear if Defendant Harper received this letter.

damage and causing him unnecessary pain. *Id.,* ¶ 60. Four months later in November 2023, Tipton was once again prescribed gabapentin. *Id.,* ¶ 61.

Tipton alleges Allegheny County and County Defendants Harper, Brinkman, and Madden were responsible for implementing or acquiescing to: (1) "a policy, procedure and/or custom of withholding or minimizing the adequacy of medical care within ACJ to control and contain the cost of medical services," *id.,* ¶¶ 33, 88; and (2) "a policy, procedure and/or custom of providing inadequate treatment and/or accommodation to inmates with serious medical needs and/or disabilities." *Id.,* ¶¶ 34, 99.

Tipton also alleges Allegheny County, County Defendants Harper, Brinkman, and Madden, and Defendants Stanton and Simms failed to prescribe or give him gabapentin "as a direct result of adhering" to those policies. *Id.,* ¶¶ 31-33, 87, 98.

### ii.    Retaliation Allegations Against Defendant Sarver

Tipton alleges Defendant Sarver began to harass and retaliate against him after Tipton was assaulted on September 16, 2022, by Defendants D'Angelo, Turner, and Doe(s) 2. *Id.,* ¶ 62. The harassment included "performing strip searches of the Plaintiff without justification and subjecting the Plaintiff to solitary confinement without justification." *Id.,* ¶ 63. Tipton began filing grievances against Sarver, who then "continued to harass the Plaintiff, including, but not limited to, performing daily anal searches of the Plaintiff while the Plaintiff was in solitary confinement without any justification to do so." *Id.,* ¶ 65.

Additionally, in August 2023, Sarver brought D'Angelo and Turner to his cell, bragged about intimidating Tipton, and "stated that he did not care about the Plaintiff's attorney and dared the Plaintiff to sue the Defendants." *Id.,* ¶¶ 66-68. Sarver told Tipton he brought D'Angelo and Turner to his cell "'in case [he] needed [his] other arm broke.'" *Id.,* ¶ 68. Tipton alleges this was to "harass, intimidate, and humiliate" him in retaliation for filing grievances. *Id.,* ¶ 69.

Tipton also alleges that in December 2023, Sarver responded to a code involving an incident between inmates that did not involve Tipton. *Id.,* ¶ 74. Even though Tipton was not involved or near the incident, Sarver pointed his taser at Tipton and told him to get on the ground, "without any provocation or justification." *Id.,* ¶ 75. Tipton feared Sarver would injure him and contends Sarver's actions were done to "intimidate and harass" him for filing grievances. *Id.,* ¶ 77. Tipton also alleges that in December 2023 Sarver planted contraband in his cell, for which Tipton "received a charge." *Id.,* ¶ 118.

### b.    Procedural History

Tipton filed a counseled Complaint on February 6, 2024. ECF No. 1. He subsequently filed a counseled Amended Complaint on April 17, 2024, which remains his operative pleading. ECF No. 26.[5]

---

[5]    "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citations omitted). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* (citation omitted).

County Defendant D'Angelo filed an Answer on January 24, 2025. ECF No. 79. Defendant Schultz was served with the Amended Complaint on January 20, 2025. Her response to the Amended Complaint is due by March 21, 2025. ECF No. 78.

In lieu of filing Answers to the Amended Complaint, the County Defendants filed a partial motion to dismiss, ECF No. 33, and Defendants Stanton and Simms filed a motion to dismiss all claims against them, ECF No. 37. The motions are fully briefed and ripe for consideration.[6]

### c.    Standard of Review – Fed. R. Civ. P. 12(b)(6)

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A defendant has the burden of showing that a complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

---

[6]    This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). This matter was originally assigned to Magistrate Judge Cynthia Reed Eddy. Upon Judge Eddy's retirement, the matter was reassigned on April 23, 2024, to Chief Magistrate Judge Richard A. Lanzillo. On July 3, 2024, by Administrative Order 2024-07 filed at 2:24-mc-10001, the matter was reassigned to this member of the Court.

U.S. 544, 570 (2007)).  A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'"  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  The court need not accept as true "unsupported conclusions and unwarranted inferences[,]" *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), nor a plaintiff's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of their claims – not if they will ultimately prevail.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

With this standard in mind, the undersigned now turns to Tipton's Amended Complaint and the pending motions to dismiss.

### d.    Discussion

Two motions to dismiss have been filed – one by the County Defendants, ECF No. 33,  and one by Defendants Stanton and Simms, ECF No. 37.  Each motion will be addressed in turn.

### i.    Partial Motion To Dismiss Filed By The County Defendants, ECF No. 33[7]

Allegheny County and the individual County defendants Harper, Madden, Brinkman, Sarver, and Turner move to dismiss Tipton's claims on several grounds, including: (1) Tipton has failed to state a claim for deliberate indifference to his serious medical need or, alternatively, Defendants Harper, Brinkman, and Madden are entitled to qualified immunity; (2) Tipton has failed to state a *Monell* claim against Allegheny County; (3) Tipton has failed to state a retaliation claim against Defendant Sarver; and (4) Tipton has failed to state an ADA claim against Allegheny County and Defendants Harper, Brinkman, and Madden.  These arguments are addressed in turn.

### A.    Constitutional Claims Under 42 U.S.C. § 1983

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States

---

[7]    The County Defendants have <u>not</u> moved to dismiss the following claims: the excessive force claims against Defendants D'Angelo and Turner in Count III, the retaliation claims against Defendants D'Angelo and Turner in Count IV, the unlawful search claims against Defendant Sarver in Count V, and the assault and battery claims against Defendants D'Angelo, Turner, and Sarver in Count VI.

Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).

### 1.    The Amended Complaint Sufficiently States an Eighth Amendment Claim Against the Individual County Defendants[8]

In Count I of the Amended Complaint, Tipton brings a claim for failure to provide adequate medical care against County Defendants Harper, Brinkman, and Madden, non-medical supervisors.

To state an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of

---

[8]    It is unclear from the allegations of the Amended Complaint whether Tipton was a pretrial detainee or a convicted prisoner during the relevant time. If he was a pretrial detainee, his § 1983 lack of medical care claims would arise under the Fourteenth Amendment, not the Eighth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (footnote omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)) (holding the "Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction.'"). For this Report, however, the distinction makes little difference "as the Fourteenth Amendment affords pretrial detainees protections at least as great as those available to inmates under the Eighth Amendment[.]" *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023). Thus, when assessing medical claims by pretrial detainees, courts are to apply the deliberate indifference standard established under the Eighth Amendment but must view the inquiry in the context of the *Bell v. Wolfish* standard, which applies Fourteenth Amendment due process principles rather than the cruel and unusual punishment standard to pretrial detainees. *See Hubbard,* 399 F.3d at 165-66.

adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (internal citation omitted).

Prison authorities are deliberately indifferent if they "intentionally deny[] or delay[] access to medical care," *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)), or if they "continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm." *Williams v. Kort*, 223 F. App'x 95, 100 (3d Cir. 2007) (citing *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999); *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)). Allegations of medical malpractice or disagreements about medical treatment are not actionable under the Eighth Amendment. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Additionally, a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "'Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode,* 845 F.2d at 1207).

Liability under § 1983 cannot be predicated on *respondeat superior*. *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. 2022) (per curiam). Additionally, the mere fact that a defendant is a "supervisor" or has supervisory authority, standing alone, cannot support liability under § 1983. *See Capone v. Marinelli*, 868 F.2d 102, 106 n.7 (3d Cir. 1989). Supervisors may be liable

if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 143 (3d Cir. 2016 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 373 F.3d 572, 586 (3d Cir. 2004)).  To hold a supervisor liable for deliberate indifference under § 1983, a plaintiff must show (1) an existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware of the risk; (3) the supervisor was indifferent to that risk; and (4) the failure to enact policies regulating that risk caused the constitutional injury.  *See Hammon v. Kennett Twp.*, 746 F. App'x 146, 149 (3d Cir. 2019 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 n.8 (3d Cir. 2002).

The County Defendants do not challenge Tipton's allegation that his chronic pain is a serious medical need.  *See generally* ECF No. 35.  *See also Lewis v. Wexford Health Sources, Inc.*, No. 1:16-00088, 2019 WL 1359804, at *6 (W.D. Pa. Mar. 26, 2019) ("chronic pain presented a serious medical need requiring treatment."); *Washington v. Wolf*, No. 2:16-CV-017114, 2017 WL 9487089, *6 (W.D. Pa. Oct. 6, 2017) (stating that chronic pain may be a serious medical need), *report and recommendation adopted as modified*, 2017 WL 5589089 (W.D. Pa. Nov. 17, 2017). Thus, the relevant question is whether County Defendants Harper, Brinkman, and Madden were deliberately indifferent to Tipton's serious medical need.

The County Defendants first argue Tipton has failed to state allegations which rise to the level of deliberate indifference on the part of Defendants Harper, Brinkman, and Madden. ECF No. 35, at 6.  For example, according to Defendants, Tipton does not allege these three defendants provided medical treatment, but only that he notified them that his medical providers had changed his prescription against his wishes. ECF No. 35, at 4.  Defendants argue Harper, Brinkman, and Madden are supervisory officials and in order to be held liable, they "must have played an affirmative role in the deprivation of the plaintiff's rights . . . the officials' misconduct cannot be merely a failure to act."  *Id.*, at 8 (quoting *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986)).

Tipton responds the allegations of the Amended Complaint show Defendants Harper, Brinkman, and Madden were responsible for:

> (i) implementing and/or acquiescing in a policy, procedure, and/or custom of providing inadequate treatment and/or accommodation to inmates with serious medical needs and/or disabilities;

> (ii) implementing and/or acquiescing in a policy, procedure, and/or custom of withholding or minimizing the adequacy of medical care within ACJ to control and contain the cost of medical services; and

> (iii) implementing and/or acquiescing in a policy, procedure, and/or custom of providing inadequate treatment and/or accommodation to inmates with serious medical needs and/or disabilities.

ECF No. 48, at 7.  *See also* ECF No. 26, ¶¶ 30-34.

The allegations in the Amended Complaint allege Defendants Harper, Brinkman, and Madden implemented a cost-saving policy, custom or practice, and Tipton was injured as a result of that policy.  Tipton further alleges Defendants

Harper, Brinkman, and Madden were aware of the risk through his grievances and letters and failed to act. *See Hammon*, 746 F. App'x at 149. *See also Gioffre v. Cnty. of Bucks*, No. CIV A. 08-4232, 2009 WL 3617742, at *4 (E.D. Pa. Nov. 2, 2009) (holding a plaintiff stated a policy, practice, or custom claim against prison officials for a policy failing to provide necessary care to keep costs low) (citing *Monmouth*, 834 F.2d at 346).

The undersigned finds these allegations are enough to state a deliberate indifference claim against County Defendants Harper, Brinkman, and Madden as supervising officials. Therefore, it is recommended the County Defendants' motion to dismiss this claim be denied.

## 2. The County Defendants Are Not Entitled to Qualified Immunity

Alternatively, the County Defendants argue that the doctrine of qualified immunity bars Tipton's claims against Defendants Harper, Brinkman, and Madden because the "Amended Complaint alleges no action was taken" by these Defendants and these "Defendants were merely notified that medical staff was treating Plaintiff." ECF No. 35, at 6.

Qualified immunity is intended to shield government officials only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a federally protected right to be "clearly established" for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that

right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The court must engage in a two-part inquiry to determine whether qualified immunity applies to official actions: (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2001) (internal citation omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (quoting *Anderson,* 483 U.S. at 640). The ultimate question is whether the state of the law when the offense occurred gave Defendants Harper, Brinkman, and Madden "fair warning" that their acts were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

At the time of Tipton's incarceration at ACJ, the law was clearly established that non-medical supervisory officials could be liable for deliberate indifference if the official had a reason to believe (or actual knowledge) that medical personnel were mistreating or not treating a prisoner's serious medical needs, *see Spruill*, 372 F.3d at 236, or the supervisory official implements or acquiesces in a policy or practice that creates an unreasonable risk of unconstitutional injury, the supervisor was aware the unreasonable risk was created, the supervisor was indifferent to that

risk, and injury resulted from the policy or practice. *Merring*, 558 F. Supp. 2d at 547.

The undersigned concludes the Amended Complaint contains sufficient factual allegations to state a claim against Defendants Harper, Brinkman, and Madden for deliberate indifference to Tipton's medical needs through the policy and procedures known to them. For these reasons, it is recommended the Motion to Dismiss based on qualified immunity be denied.

### 3. The Amended Complaint Adequately States a *Monell* Claim Against Allegheny County

Tipton also asserts a claim against Allegheny County contending it maintained a policy, procedure, or custom that resulted in withholding adequate care to keep costs down and failing to accommodate inmates with disabilities. *See* ECF No. 26, ¶¶ 31-34, 87-88. Allegheny County contends Tipton has failed to adequately plead a custom and policy sufficient to state a cause of action. ECF No. 35 at 11.

In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court of the United States held that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," the government as an entity is responsible. *Id.* at 694. The facts alleged must plausibly show that the municipality was the moving force of a constitutional violation. *Id.*

Thus, to plead municipal liability under *Monell*, Tipton must allege (1) he possessed a constitutional right of which he was deprived; (2) Allegheny County had

18

a policy or custom; (3) the policy or custom 'amount[ed] to deliberate indifference' to that constitutional right; and (4) the policy or custom was the 'moving force behind the constitutional violation.'" *Vargus v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)).  The policy or custom can either be a formal policy, where a "decisionmaker with final authority 'issues an official proclamation, policy, or edict," *Williams v. Ponik*, 822 F. App'x 108, 112 (3d Cir. 2020) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)), or an "informally adopted" custom.  *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 690). Tipton must show a "direct causal link" between the policy and/or custom and his "constitutional deprivation."  *Kramer v. City of New Kensington*, No. Civ. A. 13-606, 2015 WL 5672640, at *13 (W.D. Pa. Sept. 25, 2015) (quoting *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249-50 (3d Cir. 2007).

Tipton alleges Allegheny County "adopted a policy, procedure, or custom of withholding or minimizing the adequacy of medical care within ACJ to control and contain the cost of medical services." ECF No. 48 at 9.  He alleges his prescription for gabapentin was discontinued for non-medical reasons and he had to purchase Tylenol and ibuprofen from the commissary.  This treatment proved ineffective as his nerve damage went untreated and he experienced unnecessary pain.

Tipton's allegations more than adequately state a policy that was the direct cause or moving force behind what he alleges is constitutionally inadequate medical care and a failure to accommodate his disabilities.  At this preliminary stage in the

proceedings, the undersigned concludes Tipton's allegations are enough to state a *Monell* claim against Allegheny County.

### 4. The Amended Complaint Adequately States A Retaliation Claim Against Defendant Sarver

In Count IV of the Amended Complaint, Tipton brings retaliation claims against Defendants Sarver, D'Angelo, and Turner.  ECF No. 26 at Count IV.  Only the retaliation claim against Defendant Sarver is being challenged in this motion. ECF No. 35, at 12-16.

The County Defendants argue the incidents in the Amended Complaint range from 2017 through November 2023, and Tipton fails to "set forth any dates and times at which Defendant Sarver placed Plaintiff in solitary confinement or subjected him to strip searches. Plaintiff does allege that an assault occurred that was perpetrated by Defendants D'Angelo and Turner on September 16, 2022." ECF No. 35, at 14.  Tipton responds the Amended Complaint states Sarver began to harass him after he was assaulted by corrections officers on or about September 16, 2022, and after he began to file grievances regarding Sarver's conduct. ECF No. 48 at 12-13.  Sarver's behavior continued in a cycle where Tipton would file a grievance for retaliation and Sarver again would retaliate. ECF No. 26, ¶¶ 63 – 69, 74-77.

To state a retaliation claim, an incarcerated plaintiff "must show (1) constitutionally protected conduct, (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*,

318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  "Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." *Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010) (citations omitted).

The undersigned finds Tipton has met each prong needed to state a retaliation claim.  First, it is not disputed Tipton has met the first prong as he engaged in protected conduct by filing grievances.  *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006).  He also meets the second prong as being placed in solitary confinement without justification, strip searches, "anal searches," and threats of violence are adverse actions by prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights[.]"  *Mitchell*, 318 F.3d at 530.  *See also Simmons v. Overmyer*, No. 1:18-CV-201, 2019 WL 7283318, at *7 (W.D. Pa. Dec. 27, 2019) (holding that unnecessary strip searches "could deter an inmate of ordinary firmness from exercising his constitutional rights."); *Jackson v. O'Brien*, No. 1:18-00032, 2021 WL 3174687, at *3 (W.D. Pa. July 27, 2021) ("threats of violence do constitute an adverse action for retaliation.").

And Tipton has met the third prong – a causal link - by alleging Sarver's harassment and retaliatory conduct started after his assault by corrections officers in September 2022 and his filing of grievances.  ECF No. 26 at ¶ 62.  While Tipton does not specify the exact dates he filed grievances, he does imply that Sarver's

conduct and the filing of grievances were in close temporal proximity – Tipton was filing grievances because Sarver was performing daily "anal searches." *Id.,* ¶ 65. An "unusually suggestive temporal proximity" between the protected activity and the adverse action can demonstrate the causal connection. *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). *See also Fleming v. Pennsylvania Dep't of Corr.,* No. 1:19-CV-00113, 2021 WL 1022628, at *5 (W.D. Pa. Mar. 17, 2021) ("An unusually suggestive temporal proximity may be found where the adverse action was taken one month after the protected activity."). Discovery will clarify the exact timing of these events.

For these reasons, the undersigned finds the factual allegations in the Amended Complaint are enough to state a retaliation claim against Defendant Sarver and, as such, it is recommended the County Defendants' Motion to Dismiss be denied as to this claim.

### B.    Claims Under the Americans with Disabilities Act

Along with his constitutional claims under § 1983, Tipton also raises a disability discrimination claim under Title II of the ADA. He claims the County Defendants have violated the ADA because they have discriminated against him and, despite their knowledge of his disability, have failed to provide him an accommodation for his disability, *i.e.*, refusing to provide him a prescription for gabapentin. ECF No. 26, ¶¶ 95-96.

The County Defendants Allegheny County, Harper, Brinkman, and Madden argue Tipton has failed to state an ADA violation because he does not identify the

disability or what accommodation he was seeking.  "He merely pleads with no specificity that the Defendants were 'adhering to a policy, procedure and/or custom of providing inadequate treatment and/or accommodation to inmates with serious medical needs and/or disabilities." ECF No. 35 at 12 (quoting ECF No. 26, ¶ 32).

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Title II's implementing regulations expressly cover "jails, detention and correctional facilities" run by state and local governments.  28 C.F.R. § 35.152; see *also Yeskey v. Pennsylvania Dep't of Corr.*, 118 F.3d 168, 172 (3d Cir. 1997), *aff'd sub nom. Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

The proper defendant under a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity.  *See Emerson v. Thiel Coll.*, 296 F.3d 187, 189 (3d Cir. 2002).  Employees sued in their individual capacities cannot be sued under Title II of the ADA as they are not a "public entity" as the statute requires.  *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017).  Thus, if Tipton has named Defendants Harper, Brinkman, and Madden in their individual capacities, these claims should be dismissed.

The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12101.  The Amended Complaint states Tipton's extensive nerve damage and chronic pain limit

his ability to perform major life activities, such as walking and sleeping. ECF No.
26, ¶ 19.  These allegations adequately support his status as a qualified individual
with a disability at this point.

Tipton also argues based on the County's policy, Defendants denied him
access to his gabapentin medication.  "Access to prescription medications 'is part of
a prison's medical services,' [and] courts within this Circuit have found 'claims
alleging denial of access to prescription medications' to be actionable under the
ADA."  *Macon v. Gressel*, 1:23-CV-00283, 2024 WL 3497434, at *13 (W.D. Pa. July
22, 2024) (quoting *Happel v. Bishop*, No. 1:23-CV-13, 2024 WL 1508561, at *6)
(quoting *McPherson v. Cnty. of Dauphin*, No. 1:19-CV-01865, 2020 WL 1558206, at
*3 (M.D. Pa. Mar. 24, 2020) (collecting cases)), *report and recommendation adopted*,
2024 WL 1003902 (W.D. Pa. Mar. 8, 2024).[9]

---

[9]    As the Court explained in *Macon*,

> By contrast, decisions "regarding the diagnosis and treatment" of a
> disease are not. *Id.* (quoting *Kiman v. New Hampshire Dept, of Corr.*,
> 451 F.3d 274, 286-87 (3d Cir. 2006) ("[U]nlike decisions 'regarding
> the diagnosis and treatment' of a disease, access to prescription
> medications 'is part of a prison's medical services and thus is one of
> the "services, programs, or activities" covered by the ADA.' "). This is
> because "the ADA does not create a federal cause of action for
> prisoners challenging the medical treatment provided for their
> underlying disabilities." *Hubbard v. Taylor*, 452 F. Supp. 2d 533, 544-
> 45 (D. Del. 2006), *aff'd*, 538 F.3d 229 (3d Cir. 2008). *See also*
> *Schiavone*, 2022 WL 3142615, at * 8 (citing *Kokinda*, 663 Fed. Appx.
> at 159) ("The Third Circuit has ruled that allegations of inadequate
> medical treatment are distinct from disability-based discrimination
> under the ADA.").

*Macon*, 2024 WL 3497434, at *13.

24

Allegheny County and Defendants Harper, Brinkman, and Madden, in their official capacities,[10] may challenge on the merits the various elements of this claim and the reasonableness of Tipton's requested accommodations at the summary judgment stage of the case when the Court has the benefit of a more complete record. For now, it is recommended Tipton's ADA claim be allowed to proceed to discovery against Allegheny County and Defendants Harper, Brinkman, and Madden, in their official capacities only.

### ii. Motion to Dismiss filed by Defendants Stanton and Simms, ECF No. 37

Defendants Stanton and Simms move to dismiss Tipton's claims against them on three grounds: (1) the factual allegations of the Amended Complaint are not enough to state a claim of deliberate indifference; (2) in the alternative, Tipton's claims of deliberate indifference to his serious medical need are time barred by the applicable statute of limitations; and (3) the factual allegations of the Amended Complaint are not enough to state a claim under the ADA. These arguments are addressed in turn.

### A. Constitutional Claim Under 42 U.S.C. § 1983

#### 1. The Amended Complaint Sufficiently States an Eighth Amendment Deliberate Indifference To Serious Medical Needs Claim

Tipton alleges Defendants Stanton and Simms provided him inadequate medical care and acted with deliberate indifference to his serious medical need in

---

[10]    In Paragraphs 11-13 of the Amended Complaint, Tipton states Defendants Harper, Brinkman, and Madden were "purporting to act within the full scope of [their] authority and office pursuant to the regulations, customs and usages of ACJ."

2017 and then again in 2022 by discontinuing his gabapentin prescription for a "non-medical reason," rather than based on their professional judgment. *See* ECF No. 26, ¶¶ 25, 53-56. He contends Defendants Stanton and Simms were adhering to a policy, procedure, or custom "of withholding or minimizing the adequacy of medical care within ACJ to control and contain the cost of medical services." *Id.,* ¶¶ 16, 31. He also alleges Defendants Stanton and Simms failed to change their treatment plan even though he told them several times the Tylenol and ibuprofen were not working. *Id.* at 27-29.

Defendants Stanton and Simms argue Tipton has failed to state a deliberate indifference claim because they prescribed him pain medicine and the "decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs." ECF No. 38 at 5 (citing *Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009)).

"An inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Macon,* 2024 WL 3497434, at *10 (quoting *Tillery v. Noel*, No. 3:18-CV-783, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 3518459 (M.D. Pa. July 20, 2018). But, Tipton's allegations go beyond mere disagreement with the prescription change.

He alleges Defendants Stanton and Simms failed to change their treatment plan even after he informed them many times that the Tylenol and ibuprofen were ineffective. Other courts in this Circuit have held that persistent use of an

ineffective medicine can constitute deliberate indifference. *See, e.g.*, *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("What may state a cause of action is Dr. Napoleon's persistence in using Dilantin, or Dilantin plus phenobarbital, after Nazario told him that his seizures had increased in violence and frequency."); *Burk v. Crowe*, No. 19-CV-5792, 2020 WL 42758, at *3 (E.D. Pa. Jan. 3, 2020) ("Burk's allegation that Dr. Cassidy failed to respond or change Burk's medication after being informed that the switch was causing him serious side effects could support a finding of deliberate indifference.").

Tipton also alleges Defendants Stanton and Simms changed Tipton's prescription for non-medical reasons rather than based on their professional judgment. ECF No. 26 at ¶ 26. At the motion to dismiss stage, allegations that a medication was discontinued for non-medical reasons supports a claim for deliberate indifference. *See McGriff v. Kauffman*, No. 1:22-CV-01547, 2023 WL 3136142, at *10 (M.D. Pa. Apr. 26, 2023) (stating claim that medication was discontinued for non-medical reason could survive the motion to dismiss stage); *O'Donnell v. Rowe*, No. 1:16-CV-01149, 2018 WL 4572721, at *6 (M.D. Pa. Aug. 6, 2018), *report and recommendation adopted*, No. 1:16-CV-1149, 2018 WL 4565667 (M.D. Pa. Sept. 24, 2018) (holding that discontinuing medication for non-medical reason could survive motion to dismiss stage).

For all these reasons, it is recommended the motion to dismiss the deliberate indifference claim against Defendants Stanton and Simms be denied.

## 2. A Determination of Defendants' Statute of Limitations Affirmative Defense Must Await A More Developed Record

Defendants Stanton and Simms argue, in the alternative, the statute of limitations has expired on Tipton's deliberate indifference claims "related to failure to prescribe gabapentin for neuropathy, chronic neuropathic pain, and foot drop." ECF No. 38 at 8-9.  They argue that Tipton has made two separate and distinct claims – (1) "sometime after" his 2017 incarceration in ACJ his gabapentin for neuropathy, chronic neuropathic pain, and foot drop was discontinued and (2) following his surgery for a broken upper arm in 2022, his prescription for gabapentin was discontinued. *Id.*, at 8.  Defendants contend the claims relating to the discontinuation of the gabapentin prescription in 2017 are untimely.

Tipton responds he has alleged an "ongoing denial of adequate medical care which commenced in 2017 and ended in 2023," and therefore the continuing violation doctrine applies to extend the statute of limitations.  ECF No. 49 at 5-6.

The statute of limitations is an affirmative defense and, as such, it is typically not appropriate for consideration on a motion to dismiss under Rule 12(b)(6).  *See Robinson v. John*son, 313 F.3d 128, 135 (3d Cir. 2002) (holding that a motion to dismiss is "not the proper vehicle for asserting a time bar"); *see also* Fed. R. Civ. P. 8(c)(1) (requiring statute of limitations defense to be raised in an answer). Under the "Third Circuit Rule," however, a defendant may raise a statute of limitations defense via a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of

limitations." *Robinson*, 313 F.3d at 135 (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)).

Section 1983 "does not have its own statute of limitations, and instead 'borrows the underlying state's statute of limitations for personal-injury torts.'" *Palmore v. Clarion Univ. of Pennsylvania*, No. 23-1045, 2023 WL 5607557, at *1 (3d Cir. Aug. 30, 2023) (quoting *Randall v. City of Philadelphia L. Dep't.*, 919 F.3d 196, 198 (3d Cir. 2019)). Pennsylvania's two-year statute of limitations for personal injury applies to Tipton's constitution claims. *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998) (citing 42 Pa. Cons. Stat. Ann. § 5524). The statute of limitations begins to run "when the plaintiff knew or should have known of the injury upon which its action is based[.]" *Alexis v. Connors*, No. 23-2502, 2024 WL 3534480, at *2 (3d Cir. July 25, 2024) (citing *Sameric*, 142 F.3d at 599).

The continuing violation doctrine allows a plaintiff to "sue for actions that occurred outside the applicable limitations period if 'a defendant's conduct is part of a continuing practice [and] . . . the last act evidencing the continuing practice falls within the limitations period.'" *Cibula v. Fox,* 570 F. App'x 129, 135 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). The continuing violation doctrine does "not apply to [d]iscrete acts that are individually actionable[.]" *Weaver v. Wellpath, LLC*, No. 1:23-CV-00258, 2024 WL 3584579, at *5 (W.D. Pa. July 30, 2024) (internal citation omitted). To determine whether something is continuous, courts must consider "(1) whether the violations are part

of the same subject matter and (2) whether the violations occurred frequently." *Cibula*, 570 F. App'x at 135 (citing *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 165–67 (3d Cir. 2013)).  A plaintiff need not include facts in his complaint "sufficient to overcome an affirmative defense" like a statute of limitations.  *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

As noted above, there is a time gap in the factual allegations of the Amended Complaint, which makes it unclear if Tipton was in ACJ continually from 2017 until 2022.  That said, Tipton does allege he made repeated requests for more effective pain medicine beginning in 2017 and he repeatedly complained about the ineffective medical treatment he was receiving.  Based on these allegations, it cannot be said as a matter of law that his claims are based on two discrete acts rather than a continuing practice.  Therefore, any further analysis of Defendants' statute of limitations affirmative defense must await a more developed record.  *See Weaver*, 2024 WL 3584579, at *6; *see also McPhee v. DePuy Orthopedics, Inc.*, 989 F. Supp. 2d 451, 465 (W.D. Pa. 2012) (whether the statute of limitations barred certain claims was "not apparent from the face of the Complaint" because the court could not "determin[e] the date on which the cause of action accrued," and so could not "calculate the expiration of the four-year statute of limitations period"). For this reason, it is recommended the motion to dismiss the deliberate indifference claims based on statute of limitations be denied.

**B.    The Americans With Disability Act Claims Against Defendants Stanton and Simms Have Been Voluntarily Withdrawn**

In Count II of the Amended Complaint, Tipton alleges Defendants Stanton and Simms violated the ADA.  In his response brief, Tipton states he withdraws his ADA claims against these two defendants. ECF No. 49 at n. 1.  Accordingly, it is respectfully recommended Defendants Stanton and Simms's Motion to Dismiss Tipton's ADA claim be granted.  *See, e.g.*, *Freeman v. Wetzel*, No. CV 17-1506, 2018 WL 7350485, at *2 (W.D. Pa. Nov. 23, 2018), *report and recommendation adopted*, 2019 WL 652413 (W.D. Pa. Feb. 15, 2019) (recommending dismissal of a party after Plaintiff agreed to voluntarily dismiss a claim in his brief in opposition to a motion to dismiss).

## III.    Conclusion

For the above reasons, it is respectfully recommended as follows:

1.    The motion filed by the County Defendants be granted in part and denied in part.  The motion be granted to the extent Tipton has brought an ADA claim against the County Defendants in their individual capacities.  In all other respects, the motion be denied.

2.    The motion filed by Defendants Stanton and Simms be granted in part and denied in part.  The motion be granted without objection to the ADA claims against Defendants Stanton and Simms.  In all other respects, the motion be denied.[11]

---

[11]    Based on this recommendation, these claims remain:

31

Any party is permitted to file written specific Objections to this Report and Recommendation to the assigned United States District Judge.  In accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and LCvR 72.D., written objections, if any, to this Report and Recommendation must be filed by **February 28, 2025**.  Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections will constitute a waiver of appellate rights.  *See Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011) (quoting *Siers v. Morrash*, 700 F.2d 113, 116 (3d Cir. 1983).  *See also EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (describing standard of appellate review when no timely and specific objections are filed as limited to review for plain error).

---

Count I – Eighth Amendment failure to provide adequate medical care claims against Allegheny County, Harper, Brinkman, Madden, Schultz, Simms, and Doe(s) 1;

Count II – ADA and Eighth Amendment claims for failure to accommodate against Allegheny County and Defendants Harper, Brinkman, and Madden, in their official capacities only;

Count III - Fourth Amendment excessive force claim against Defendants D'Angelo, Turner, and Doe(s) 2;

Count IV:  First Amendment retaliation claims against Defendants Sarver, D'Angelo, and Turner;

Count V: Fourth Amendment unlawful search claim against Defendant Sarver; and

Count VI: Pennsylvania state law tort claims for assault and battery against Defendants D'Angelo, Turner, Sarver, and Doe(s) 2.

DATED this 14th day of February, 2025.

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge


cc:     All Counsel of Record
        (via ECF electronic notification)